# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CHARLES BEASLEY, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>SHERIFF JOHN BUNCICH, solely in his official )<br>capacity as Lake County Sheriff; JEFFERY )<br>KUMOREK, solely in his official capacity as )<br>Lake County Jail Administrator; and OFFICER M. )<br>BUEHRLE, )<br>      Defendants. ) | Cause No.: 2:13-CV-23-PRC |

## OPINION AND ORDER

This matter is before the Court on a Sheriff Defendants' Motion for Summary Judgment [DE 35], filed by Defendants Sheriff John Buncich, Jeffrey Kumorek, and Officer M. Buehrle on April 14, 2014. For the reasons set forth below, the motion is granted in part and denied in part.

## PROCEDURAL BACKGROUND

Plaintiff Charles Beasley filed his Complaint against Defendants Lake County, Indiana; Lake County Board of Commissioners; Sheriff John Buncich, solely in his official capacity as Lake County Sheriff; Jeffery Kumorek, solely in his official capacity as Lake County Jail Administrator; Officer M. Buehrle; John Doe; Jeff Doe; Jack Doe; Joseph Doe; Jane Doe; Janet Doe; and other Unknown Parties on January 15, 2013. Counts I through IV of the Complaint are federal claims brought under 42 U.S.C. § 1983 for alleged violations of the United States Constitution. Counts V and XIV allege violations of Article I, Sections 11, 12, 15, 21, 23, and 37 and of Article 1, Section 1 of the Indiana Constitution, respectively. The Complaint also alleges Indiana state law claims of false arrest, confinement, and imprisonment (Counts VI, IX, XI, XII, XIII); humiliation (Count VII); intentional infliction of emotional distress (Count VIII); and criminal confinement (Count X).

Defendants Lake County, Indiana, and Lake County Board of Commissioners filed an Answer on April 30, 2013. Defendants Sheriff Buncich and Officer Buehrle filed an Answer on May 7, 2013. Defendant Jeffery Kumorek filed a separate Answer, also on May 7, 2013. On May 8, 2013, the Doe Defendants were severed as party defendants.

Defendants Sheriff Buncich, Jeffery Kumorek, and Officer Buehrle filed the instant Motion for Summary Judgment on April 14, 2014. Plaintiff filed a response in opposition on May 12, 2014, and Defendants filed a reply on May 23, 2014.

On April 15, 2014, Plaintiff's claims against Defendants Lake County, Indiana, and Lake County Board of Commissioners were dismissed with prejudice pursuant to the parties' stipulation.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-11 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

On Saturday, January 29, 2011, Plaintiff was invited by his friend, James Sweeney, to visit Club 83 in Merrillville, Indiana. Sweeney picked Plaintiff up in Chicago, drove them back to Northwest Indiana, and acted as Plaintiff's "designated driver" for the evening. Plaintiff and Sweeney socialized with some of Sweeney's coworkers that afternoon and evening before going to the club. Plaintiff, Sweeney, and two of Sweeney's coworkers went to Club 83 sometime that night, where they stayed for two to three hours. Over the course of twelve hours, Plaintiff consumed at

4

least six alcoholic beverages, including two beers, two or three "Captain and Cokes," and two Jägermeister shots.

At approximately 2:46 a.m. on Sunday, January 30, 2011, Plaintiff was arrested by Officer Buehrle on charges of public intoxication and disorderly conduct. In his Investigation Narrative, Officer Buehrle wrote that he saw Plaintiff yelling about being forced to leave the bar and that Plaintiff was causing a disturbance. (Def. Br., Exh. 3). While speaking with Plaintiff, Officer Buehrle detected "a strong odor commonly associated with an intoxicating beverage" and observed "extremely slurred speech" and "red watery eyes." *Id*. He wrote that Plaintiff was swaying while speaking with the officers. When Plaintiff was advised to lower his voice and leave the area, Plaintiff refused and continued yelling. Officer Buehrle advised Plaintiff a second time to leave the area, to which Plaintiff responded, "'Take me to jail, I don't care.'" *Id*. Officer Buehrle warned Plaintiff a third time to leave or he would be taken to jail for public intoxication and disorderly conduct, to which Plaintiff replied, "'[T]ake me to jail, I dont [sic] care, we can talk about this in court.'" *Id*. Officer Buehrle then placed Plaintiff under arrest.

In contrast, Plaintiff testified in his deposition that Officer Buehrle's report was "completely fabricated," (Def. Br., Exh. 1, p. 33, l.15), and an "elaborate story he has written . . . nowhere close to what occurred," *id.* at p. 34, ll. 6-7. Plaintiff further testified that the only conversation he had with Officer Buehrle was Officer Buehrle saying, "I'll take you to jail," and Plaintiff responding, "If that's what you want to do." (Pl. Br., Ex. 1, p. 29, ll. 6-22). When asked at his deposition whether he "had a strong odor of intoxicants," Plaintiff first responded, "No. I would say no. I mean, I certainly had some drinks . . . ." (Def. Br., Ex. 1, p. 34, l. 12). Then when asked whether he agreed or disagreed that he smelled of "intoxicants," he responded, "I don't agree. I don't disagree. I don't

5

know what I smelled like at that point. I had been dancing and I had some drinks. I don't know." *Id*. at ll. 21-23. He testified that he believed that his eyes were not bloodshot and watery, that he was not unsteady or swaying, that he was not falling, and that he was not crying. Plaintiff stated in his deposition that, when he left the club, he knew what was going on around him but "would not have trusted" himself "behind the wheel." At the time of his arrest, he believed he was not "100 percent sober" and that he was somewhere between intoxicated and sober. (Def. Br., Ex. 1, p. 46, ll. 24-25, p. 47 ll. 1-2).

Because Plaintiff was "in a daze" and "in shock" by the time he was transported to the jail, he is unsure of how much time passed between being arrested at the club and being placed in a holding cell at the Lake County Jail. *Id*. at p. 44, ll. 1-12. The holding cell was so full that Plaintiff had to sit on the floor, and when the door to the cell was shut he started yelling and screaming. Plaintiff pushed an intercom button on the wall to ask for a phone call and was told he would have to wait his turn, at which point he "lost [his] mind . . . and punched the metal door." *Id*. at p. 43, ll. 13-14. Plaintiff chose not to eat or drink any food or water when it was offered by the Jail staff. Plaintiff was released early in the morning on Monday, January 31, 2011, after being held at the Lake County Jail for approximately 24 hours.

**ANALYSIS**

Defendants seek summary judgment on all claims in Plaintiff's Complaint, which includes claims under 42 U.S.C. § 1983, the Indiana Constitution, and Indiana state tort law. The Court considers each in turn.

## A. Section 1983 Claims

In Counts I through IV of the Complaint, Plaintiff alleges constitutional violations under 42 U.S.C. § 1983 against Defendants Sheriff Buncich and Jail Administrator Kumorek solely in their official capacities and against Officer Buehrle in both his official and individual capacities. *See* (Compl. ¶ 16) ("Plaintiff is suing all public employees in their official and individual capacities, with the exception of Sheriff Buncich and Warden/Jail Administrator Kumorek."). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 itself does not establish substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). In this case, Plaintiff seeks redress for alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

*1.    Section 1983 Official Capacity Claims*

The § 1983 official capacity claims against Sheriff Buncich, Jail Administrator Kumorek, and Officer Buehrle in Counts I and II allege false arrest, unreasonable search and seizure, and false imprisonment in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. In Count III, Plaintiff alleges that Sheriff Buncich and Jail Administrator Kumorek failed to supervise, instruct, control, and discipline police officers and jail employees and that they directly or indirectly approved or ratified unlawful conduct of police officers and jail employees in violation of the Fourth, Fifth, and Fourteenth Amendments. In Count IV, Plaintiff alleges a claim

against Sheriff Buncich and Jail Administrator Kumorek under the Eighth Amendment to the United States Constitution for battery, criminal confinement, false imprisonment, and excessive force.[1] Although Officer Buehrle is named in the opening and closing paragraphs of Counts III and IV, as he is in every count in the Complaint, none of the numbered paragraphs in either Count III or IV alleges any action by Officer Buehrle.

An official capacity claim is, in practicality, a claim against the employing entity and is governed by the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). In this case, the employing entities are the Lake County Sheriff's Department and the Lake County Jail. Municipalities cannot be held liable for § 1983 violations under the theory of respondeat superior; rather, a local government may be held liable only "when [the] execution of a government's policy or custom . . . inflicts the injury" for which the government is sued under § 1983. *Monell*, 436 U.S. at 694.

Thus, to demonstrate liability by the Lake County Sheriff's Department and the Lake County Jail for the alleged § 1983 claims, Plaintiff must establish an official policy or custom through:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (citing *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). There must also be a causal relationship between the policy and the alleged constitutional violation such that the official policy is the "moving force"

---

[1] The Eighth Amendment's prohibition against cruel and unusual punishment applies after conviction; prior to conviction, protection is provided by the Fourteenth Amendment. *Palmer v. Marion Cnty.*, 327 F.3d 588, 593 (7th Cir. 2003). However, the standard under both amendments is deliberate indifference. *Id.*

behind the constitutional deprivation. *Id*. at 833 (citing *Estate of Sims*, 506 F.3d at 515 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

In *Canton*, the Supreme Court held that a municipality's failure to train its employees could be considered an actionable "custom or policy" under § 1983 when the failure to train in a "relevant respect" demonstrates a "deliberate indifference" to its inhabitants' rights. *Canton*, 489 U.S. at 388. Deliberate indifference can be established by showing that the municipality either "fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation" or "fails to provide further training after learning of a pattern of constitutional violations by the [employees]." *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir. 2003) (citations omitted). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, — U.S. —, —, 131 S. Ct. 1350, 1359 (2011). Generally, the allegation of a single incident of unconstitutional activity is not sufficient to support the inference that the activity was pursuant to an official policy. *Id*. at 1360 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (2000))); *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) ("Ordinarily, one incident is not sufficient to establish a custom that can give rise to *Monell* liability." (citing *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994))); *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981).

9

However, in *Canton*, "the Court left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 131 S. Ct. at 1361 (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (2000)). In *Canton*, the Supreme Court gave the hypothetical of a city arming and deploying its police force with firearms to capture fleeing felons without training the officers in the constitutional limitations on lethal force. *Id.* (citing *Canton*, 489 U.S. at 390 n. 10). The Supreme Court "theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409). In *Connick*, the Court explained that *Canton* did not "foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.*

In his response brief, Plaintiff proceeds on his official capacity claims only on a failure to train theory, contending that "there is an exception to *Monell* liability whe[n] it comes to . . . 'failure to train.'" (Pl. Resp., p. 6). Plaintiff argues that he has a constitutional right to be "at a bar open to the public even if he is [sic] Afro American decent [sic] the Defendants were subject to liability under [*Monell*] because the abuse and harassment of Plaintiff was so severe that it itself established a practice so pervasive and widespread that it [sic] has actual or constructed[sic] knowledge of it," and that "[t]he failure to train may be inferred by the treatment that Plaintiff received by being arrested for nothing and how he was treated at the jail." (Pl. Br., pp. 6, 8).[2] Thus, Plaintiff appears

---

[2] In support, Plaintiff cites the nonbinding case of *Matusick v. Erie County Water Auth.*, 739 F.3d 51 (2d Cir. 2014), *opinion amended and superseded on rehearing by* 2014 WL 700718, — F.3d — (2d Cir. Feb. 25, 2014), which dealt with the ongoing assault and verbal harassment of the plaintiff over a period of time and, thus, is not on point because Plaintiff in this case is not alleging a series of incidents. Moreover, citation to law outside the Seventh Circuit

to rely on the "single-incident" theory hypothesized in *Canton* and discussed further in *Connick*. *See Connick*, 131 S. Ct. at 1360-61.

Yet, Plaintiff offers no evidence of a decision by Defendants not to train Lake County police officers or jail staff. Nor has Plaintiff identified any evidence that there was an absence of training on any subject relevant to the incident underlying this case. Again, in the context of *Monell* liability, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform" and the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality]." *Canton*, 489 U.S. at 390-91. Thus, Plaintiff has not satisfied his burden of demonstrating a genuine issue of material fact on a failure to train by the Lake County Sheriff's Department or the Lake County Jail.

Nor does Plaintiff identify any evidence of an express policy, a custom or practice, or an action by a person with final policymaking authority that would impose liability under *Monell*. Plaintiff admitted that he had no contact with Sheriff Buncich or Jail Administrator Kumorek during his arrest or in relation to this suit generally. Plaintiff has no evidence of any direct involvement by Buncich in Plaintiff's arrest. Nor does Plaintiff have any evidence that either Buncich or Kumorek failed to instruct, supervise, control, or discipline Lake County police officers or jail staff or refused to prevent constitutional deprivations.

Plaintiff has failed to designate any evidence to create a genuine issue of material fact regarding an unconstitutional policy or custom of Defendants that would give rise to liability under the *Monell* standard. Accordingly, the Court grants summary judgment in favor of Defendants

---

Court of Appeals is unnecessary as that court has recognized that, "where Plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981).

Sheriff Buncich, Jail Administrator Kumorek, and Officer Buehrle on all § 1983 claims in Counts I through IV brought against them in their official capacities.

2. *Individual Capacity Claims Against Officer Buehrle*

In Counts I and II of the Complaint, Plaintiff brings § 1983 claims of false arrest, unreasonable search and seizure, and false imprisonment against Officer Buehrle in his individual capacity. Plaintiff alleges that Officer Buehrle did not have probable cause to arrest him for public intoxication and disorderly conduct in violation of his Fourth and Fourteenth Amendment rights. He further alleges that the search, which was done incident to the arrest, and the detention that followed violated his Fourth and Fourteenth Amendment rights because the arrest was unlawful. As previously noted, although Officer Buehrle is named in the opening and closing paragraphs of Counts III and IV, none of the numbered paragraphs in either Count III or IV alleges any action by Officer Buehrle. In the Motion for Summary Judgment, Officer Buehrle contends that he is entitled to qualified immunity on the claims against him because he had probable cause for the arrest and, therefore, the arrest, the search, and the detention were lawful and did not violate Plaintiff's constitutional rights. Plaintiff responds that there are factual disputes precluding summary judgment.

"Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); citing *Messerschmidt v. Millender*, — U.S. —, —, 132 S.Ct. 1235, 1244 (2012)). This defense gives public officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who

knowingly violate the law.'" *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To overcome the defense of qualified immunity on summary judgment, a plaintiff must show (1) that, viewing the facts in the light most favorable to plaintiff, the officer violated the plaintiff's constitutional rights and (2) that the right in question was clearly established at the time of violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Abbott*, 705 F.3d at 713. The Court may choose the order in which it evaluates these questions, and a failure to show either establishes the defense of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Court considers first whether Officer Buehrle violated Plaintiff's constitutional rights by examining whether he had probable cause to arrest Plaintiff for public intoxication and disorderly conduct. Probable cause is a complete bar to any § 1983 claim of false arrest against a police officer. *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)); *see also Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause"). "Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) (citing *Abbott*, 705 F.3d 706, 714 (7th Cir. 2013); *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003)). This is a "practical, commonsense standard that requires only the type of fair probability on which reasonable people act." *Id.* (citing *Florida v. Harris*, — U.S. — , —, 133 S.Ct. 1050, 1055-56 (2013); *Hanson v. Dane Cnty., Wis.*, 608 F.3d 335, 338 (7th Cir. 2010)).

The Indiana public intoxication statute in effect at the time of Plaintiff's arrest on January 30, 2011, provided: "It is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance." *Christian v. State*, 897 N.E.2d 503, 504 (Ind. Ct. App. 2008) (quoting Ind. Code § 7.1-5-1-3, superseded by statute, 2012 Ind. Legis. Serv. P.L. 117–2012, § 1 ).[3] "Intoxication" is defined by statute as being under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86; *see also Curtis v. State*, 937 N.E.2d 868, 873-74 (Ind. Ct. App. 2010); *Perkins v. State*, 812 N.E.2d 836, 841 (Ind. Ct. App. 2004) (intoxication can be established by showing impairment). Intoxication may be established by showing evidence of "(1) the consumption of [a] significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech." *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008) (citing *Fields v. State*, 888 N.E.2d 304, 307 (Ind. Ct. App. 2008)).

Here, the circumstances surrounding Plaintiff's arrest are disputed by the parties. Officer Buehrle wrote in his report that Plaintiff had a "strong odor of intoxicants," "extremely slurred

---

[3] Following the Indiana Supreme Court's decision in *Moore v. State*, 949 N.E.2d 343, 344 (Ind. 2011), the Indiana legislature amended the statute, effective July 1, 2012, to add four conduct elements to the definition of public intoxication:
    [I]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9), if the person:
        (1) endangers the person's life;
        (2) endangers the life of another person;
        (3) breaches the peace or is in imminent danger of breaching the peace; or
        (4) harasses, annoys, or alarms another person.
*See* Ind. Code Ann. § 7.1-5-1-3(a) (eff. July 1, 2012). Since then, the Indiana Court of Appeals has held the "annoys" prong to be unconstitutionally vague. *See Morgan v. State*, 4 N.E.3d 751, 758 (2014).

speech," and "red watery eyes" and that Plaintiff "was swaying" while speaking with officers. In contrast, Plaintiff testified that his eyes were not red and watery and that he was not swaying, unsteady, or falling. Although Plaintiff testified that he was not "sober" at the time of his arrest, he also testified that he was not intoxicated. Moreover, Plaintiff contends that Officer Buehrle's Investigation Narrative "was completely fabricated" and that Officer Buehrle made it up. (DE 37-1; Ex 1, p. 33, lines 15-22). Because there is a genuine issue of material fact regarding whether Plaintiff was intoxicated under the statute, at this summary judgment stage the Court cannot find as a matter of law that Officer Buehrle had probable cause to arrest Plaintiff on the charge of public intoxication.

Similarly, a genuine issue of material fact exists regarding Plaintiff's actions in relation to the charge of disorderly conduct. The statute, which was and remains in effect, provides: "A person who recklessly, knowingly, or intentionally . . . makes unreasonable noise and continues to do so after being asked to stop . . . commits disorderly conduct, a Class B misdemeanor." Ind. Code § 35-45-1-3(a). Officer Buehrle wrote in his report that he saw Plaintiff yelling and causing a disturbance and that Plaintiff continued to yell despite being told by Officer Buehrle to lower his voice and to find his friend's car and leave. In contrast, Plaintiff contends that the only words exchanged between him and Officer Buehrle were Officer Buehrle saying, "I'll take you to jail," and Plaintiff responding, "Uh, if that's what you want to do." (Def. Br., Ex. 1, p. 26, ll. 23-24, p. 29, ll. 8-11, 14-19). In his deposition, Plaintiff denied yelling and screaming. In light of these factual disputes, at this summary judgment stage the Court cannot find as a matter of law that Officer Buehrle had probable cause to arrest Plaintiff on the charge of disorderly conduct.

15

The Court turns to the question of whether the constitutional rights were clearly established at the time. A plaintiff may either show that there is a "clearly analogous case establishing a right to be free from the specific conduct at issue or that the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (internal quotations omitted).

For the claim of public intoxication, Plaintiff testified that he was not intoxicated, did not have red watery eyes, and was not swaying, unsteady, or falling and that Officer Buehrle's version of the events was fabricated. Given that the facts surrounding whether Plaintiff was intoxicated are disputed, and, taking Plaintiff's alleged facts as true as the Court must on this motion for summary judgment, no reasonable officer would have thought that Plaintiff's conduct met the standard for public intoxication. *See Saucier*, 533 U.S. at 202. For purposes of the qualified immunity analysis, Officer Buehrle should have been on notice that Plaintiff had a right to be free from arrest for public intoxication under the circumstances. *See, e.g.*, *Freeman v. Ray*, No. 3:12-cv-154, 2014 WL 772643, at *6 (N.D. Ind. Feb. 24, 2014) (finding that no reasonable police officer could have believed that it was legal to give a breathalyser test to a person who exhibited no signs of being intoxicated or that it was legal to falsify breathalyser test results and arrest a person for public intoxication who was both sober and not on public property).

Similarly, as for the charge of disorderly conduct, Plaintiff testified that he did not yell, that he was not unruly, and, again, that Officer Buehrle's version of the events was fabricated. Taking Plaintiff's alleged facts as true, for purposes of the qualified immunity analysis, case law should have put Officer Buehrle on notice that Plaintiff had a right to be free from arrest for disorderly conduct under the circumstances. *See, e.g.*, *Chelios*, 520 F.3d at 691 (holding that, because under

16

the plaintiff's version of the facts, plaintiff had not made physical contact with the officer, conducted himself in a disorderly manner, or otherwise obstructed or impeded the officer in his duties, case law would have put the officer on notice that plaintiff had a right to be free from arrest under those circumstances); *Pourghoraishi v. Flying J. Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (finding that an officer was not entitled to qualified immunity when, viewing the facts in the light most favorable to the plaintiff, the officer did not have probable cause to arrest plaintiff for disorderly conduct under Indiana law because the plaintiff "did not raise his voice, use profanity, make unreasonable noise, or otherwise engage in any behaviors prohibited by the disorderly conduct statute" and, thus, "no reasonable officer could have concluded that he had probable cause to arrest" the plaintiff).

Accordingly, Officer Buehrle is not entitled to qualified immunity on Plaintiff's § 1983 claims. The Court denies the Motion for Summary Judgment on Counts I and II against Officer Buehrle in his individual capacity.

### B. Indiana State Constitutional Claims

Count V of Plaintiff's Complaint alleges violations of Article I, Sections 11, 12, 15, 21, 23, and 37 of the Indiana Constitution and Count XIV alleges a violation of Article 1, Section 1 of the Indiana Constitution. Defendants move for summary judgment on both counts. Plaintiff abandoned these claims by failing to address them in his response brief. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) (holding that the plaintiff abandoned a claim in the district court by failing to address the claim in his brief in response to summary judgment). Accordingly, the Court grants summary judgment in favor of Defendants on the Indiana State Constitutional claims in Counts V and XIV of the Complaint.

## C. State Law Tort Claims

In his Complaint, Plaintiff brings pendant Indiana state law claims of false arrest, confinement, and imprisonment (Counts VI, IX, XI, XII, XIII); humiliation (Count VII); intentional infliction of emotional distress (Count VIII); and criminal confinement (Count X).

A claim under the Indiana Tort Claims Act ("ITCA") against a political subdivision is barred unless notice is given to the governing body of the political subdivision and the Indiana political subdivision risk management commission within 180 days after the loss occurred. Ind. Code § 34-13-3-8. "The notice requirements of the ITCA apply not only to suits against political subdivisions but also to suits against employees of a political subdivision." *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) (citing *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992)). Failure to comply with the notice requirements is an affirmative defense and acts as a complete bar to recovery on all state law tort claims because notice is a procedural precedent that a plaintiff must prove. *Alexander v. City of S. Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (citing *Davidson*, 716 N.E.2d at 34). In the present case, Plaintiff admits to not filing the requisite notice prior to filing this lawsuit.[4] Accordingly, the Court grants summary judgment in favor of Defendants on the Indiana state law tort claims in Counts VI through XIII of the Complaint.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Sheriff Defendants' Motion for Summary Judgment [DE 35].

---

[4] Plaintiff contends that the ITCA does not apply when there is a § 1983 claim, citing *Felder v. Casey*, 487 U.S. 131 (1988). In *Felder*, the United States Supreme Court held that state law "notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." *Id.* at 140. Nevertheless, "the ITCA applies to pendant state court claims within a § 1983 suit." *Alexander v. City of S. Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (citing *Meury v. Eagle-Union Cmty. Sch. Corp.*, 714 N.E.2d 233, 242 (Ind. Ct. App. 1999)).

The Court **GRANTS** summary judgment in favor of Defendants Sheriff John Buncich, Jeffrey Kumorek, and Officer M. Buehrle and against Plaintiff Charles Beasley (1) on the 42 U.S.C. § 1983 claims against Defendants Sheriff Buncich, Jeffrey Kumorek, and Officer Buehrle in their official capacities <u>only</u> (Counts I-IV), (2) on all claims brought under the Indiana Constitution (Counts V and XIV), and (3) on all of Plaintiff's Indiana state law tort claims (Counts VI through XIII).

The Court **DENIES** Defendants' request for summary judgment on the 42 U.S.C. § 1983 claims against Officer M. Buehrle in Counts I and II in his individual capacity <u>only</u>, which remain pending for trial.

The Court **REAFFIRMS** the final pretrial conference set for **August 8, 2014, at 9:00 a.m.**, and the jury trial set for **September 8, 2014**.

So ORDERED this 22nd day of July, 2014.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record